**SIGNED THIS: February 03, 2010**

_____
**THOMAS L. PERKINS
UNITED STATES CHIEF BANKRUPTCY JUDGE**

_____

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| IN RE: | ) | |
| MARK RAY, | ) | No. 06-82165 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| BERWICK BLACK CATTLE COMPANY, | ) | No. 06-82166 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| DONALD K. BROWN, D/B/A BROWN'S CORN BY-PRODUCTS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adv. No. 07-8155 |
| | ) | |
| MARK RAY, BERWICK BLACK CATTLE COMPANY and HIGH PLAINS FARM CREDIT, PCA, | ) | |
| | ) | |
| Defendants. | ) | |

O P I N I O N

Before the Court is the Motion for Partial Summary Judgment filed by the Plaintiff,

Donald K. Brown, d/b/a Brown's Corn By-Products (PLAINTIFF) against the Defendants,

Mark Ray, Berwick Black Cattle Company and High Plains Farm Credit, PCA (DEFENDANTS), on the amended complaint seeking a determination of the amount of his agister's lien and disgorgement from High Plains for the amount which may be determined to be due.

**BACKGROUND**

The DEBTORS' primary business was the purchasing and raising of cattle for sale. Some of the DEBTORS' livestock were maintained on feed lots owned by third parties, under contracts for the feeding and care. Services rendered by those "providers" for care of the livestock in their possession gave rise to possessory agister's liens under state law. Involuntary petitions were filed against the DEBTORS on December 26, 2006. The DEBTORS' operations called for both ordinary course and non-ordinary course sales of the livestock, but the providers, including the PLAINTIFF, declined to cooperate in the DEBTORS' proposed sales without adequate protection of their claimed lien rights. As a result, as the cattle were sold, court orders provided that those lien rights, to the extent applicable, attached to the proceeds of sale.

In March, 2007, the DEBTORS, having reached an agreement with the PLAINTIFF, sought authority to pay the PLAINTIFF the sum of $138,094.48, for the release of 500 of the 942 cows (53%) in the PLAINTIFF'S possession, alleging that those cows were expected to give birth in the coming weeks and that the PLAINTIFF'S ranch could not accommodate those cows and their offspring. The agreed-upon sum represented approximately the same proportion (53.8%) of the total claimed expenses of $256,681.85 attributable to the entire

herd of 942 cattle. According to the motion, the lien claim was comprised of rent of $108,927.40 for 2005, 2006 and 2007, and $147,754.45 in silage fees for 2005 and 2006. An order was entered approving the motion and a report of transfer was later filed with the court.

Not long into the pendency of the cases, the DEBTORS began to pursue a steady course of liquidation. In October, 2007, the Court approved the sale of approximately 2,610 head of cattle to Don Kniss, pursuant to Section 363(f), with claims and interests to attach to the sale proceeds. The order established a procedure for lien adjudication, giving parties asserting a claim against the sale proceeds sixty days to reach an agreement with the DEBTOR or to file an adversary proceeding to determine the amounts of their claims. After the parties' efforts to settle the matter failed, the PLAINTIFF brought this adversary proceeding, claiming an agister's lien in the amount of $180,175.21. In answer to the complaint, the DEBTORS contended that the PLAINTIFF breached the agreements by failing to properly maintain certain of the cattle and that the PLAINTIFF failed to credit payments of $19,980 and $12,500 made between June and September of 2007. The DEBTORS also asserted a counterclaim for breach of contract and/or conversion of certain missing cattle. The parties began discovery and entered into a Rule 26(f) Report and Discovery Plan.

Early in 2008, the DEBTORS filed a plan and disclosure statement. In the spring of that year, the DEBTORS filed motions to sell their remaining inventories of feedstock, fertilized embryos, bull semen, manure, machinery and equipment, as well as cattle and

certain real estate. An amended plan was filed in June, 2008, which met with the requisite approval of the DEBTORS' creditors. This Court, however, declined to confirm the plan based upon certain third-party releases provided for in the plan.[1] The DEBTORS' attempts to procure approval of the plan without the releases were unavailing and the cases were dismissed.[2]

Uncertain whether a state court would enforce the lien created by this Court's order of October 4, 2007, in the sale proceeds being held by High Plains, the PLAINTIFF filed a motion for retention of jurisdiction of the adversary proceeding. The PLAINTIFF also sought to add High Plains as a Defendant, expressing its concern that if it was not made a party to the proceeding it would not voluntarily turn over the funds. The Court granted the PLAINTIFF'S motion and an amended complaint was filed adding a count against High Plains for disgorgement. The PLAINTIFF moved for partial summary judgment on his complaint seeking entry of a judgment that he has a valid lien on the sale proceeds in the amount of $180,175.21, plus interest.

**LEGAL STANDARDS**

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment

---

[1] *In re Berwick Black Cattle Co.*, 394 B.R. 448 (Bankr.C.D.Ill. 2008).

[2] This Court's ruling dismissing both cases was affirmed on appeal. *In re Berwick Black Cattle Co.*, 09-1121 (C.D.Ill. July 30, 2009) (unpublished)

4

as a matter of law." Fed.R.Civ.P. 56( c). In considering such a motion, the court construes the evidence and all inferences that can reasonably be drawn therefrom in the light most favorable to the nonmoving party. *In re Chambers*, 348 F.3d 650 (7th Cir. 2003). The party opposing a properly supported motion for summary judgment, however, may not defeat it simply by resting upon the allegations and denials of the pleadings, but must present affirmative evidence raising a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). It is not the role of the trial court to weigh the evidence or to determine its credibility. *Id*.

**ANALYSIS**

Asserting that the DEBTORS did not deny that the amounts claimed by the PLAINTIFF were actually due and owing, but only asserted offsets against his claim, the PLAINTIFF seeks a determination that he holds an agister's lien in the amount of $180,175.21, plus interest, against the sale proceeds being held by High Plains. PLAINTIFF breaks down his lien claim into the following components: prepetition "rent" and silage of $118,587.37; postpetition LG silage of $34,720; postpetition Pioneer silage of $7,491.02; and postpetition "rent" from August 15, 2007 through October 25, 2007 of $19,376.82.[3] The PLAINTIFF also seeks 5% prejudgment interest of $21,154.10, as of September 29, 2009.

---

[3] LG and Pioneer are different types of silage/shucklage which are fed to cattle. Silage differs from shucklage in that silage is made using the entire plant including the grain, while shucklage consists mostly of the remnants of the plant after the grain has been shucked.

The DEBTORS oppose the PLAINTIFF'S motion for partial summary judgment, contending that material issues of fact are in dispute as to certain components of the PLAINTIFF'S claim. The following chart summarizes the parties' positions.

| Category | Amount claimed by PLAINTIFF | Amount disputed by DEBTORS |
|---|---|---|
| **Prepetition** | | |
| Rent (including labor)[4] | $108,927.40 | |
| Silage | 147,754.45 | $83,083.52 |
| Total | $256,681.85 | $83,083.52 |
| Less payment received | -138,094.48 | |
| | $118,587.37 | $83,083.52 |
| **Postpetition** | | |
| Rent (including labor) | 19,376.82 | 9,987.50 |
| LG silage | 34,720.00 | 34,720.00 |
| Pioneer silage | 7,491.02 | 7,491.02 |
| Total Lien Claim | $180,175.21 | |
| Total Amount Disputed | | $135,282.04 |

The DEBTORS do not dispute the PLAINTIFF'S claims for pasture rent or for utilities. Nor do the DEBTORS dispute the labor charges incurred prior to the removal of a significant portion of the cattle in the Spring of 2007. The parties' controversy involves only the PLAINTIFF'S claim for silage and the amounts claimed for labor charges by the PLAINTIFF after the removal of the birthing cattle.

**Plaintiff's claim for silage - Prepetition**

The DEBTORS contend that the proper amount of the PLAINTIFF'S remaining prepetition lien claim is $35,503.85, after excluding the charges of $83,083.52 for Pioneer silage which was not fed to the DEBTORS' cattle which were pastured on the PLAINTIFF'S property.

---

[4]According to the PLAINTIFF, the DEBTORS agreed to pay $1,000 per month for pasture rent; costs of utilities used to maintain DEBTORS' cattle and labor at $25 per hour.

6

The DEBTORS' position, undisputedly correct, is that the statutory agister's lien only extends to charges for feed furnished to the livestock in the agister's care.[5] In a sworn affidavit filed on December 2, 2009, Mark Ray states that the PLAINTIFF'S prepetition claim in the amount of $118,587.37 includes a $83,083.52 bill for 3,195.52 tons of Pioneer silage that was not used to feed cattle located on PLAINTIFF'S property.[6] According to Mark Ray's affidavit, that Pioneer silage was fed to the DEBTORS' cattle at other locations.

While the PLAINTIFF forthrightly admits that the Pioneer silage supplied to the DEBTORS during the pendency of the bankruptcy proceedings was not fed to DEBTORS' cattle located on PLAINTIFF'S property, but was delivered to the DEBTORS at their property, no evidentiary support is offered in support of his contention that the Pioneer silage billed prepetition was fed to the agistered cattle. Rather, the PLAINTIFF argues that admissions made by the DEBTORS, early on in the proceedings, in connection with their motion to pay the PLAINTIFF an agreed amount to procure his consent to the removal of 500 head of cattle, bar the DEBTORS from contesting the PLAINTIFF'S prepetition claim for silage. The PLAINTIFF points to the statement in the motion that the DEBTORS had been provided with documentation substantiating PLAINTIFF'S claim for services

---

[5] Under the plain language of the statute, the lien of the agister only extends to the feeding of the cattle cared for by the agister. An agister is "one who receives and pastures cattle for hire." *Reynolds, for Use of Jones, v. Weakly*, 293 Ill.App. 384, 12 N.E.2d 689 (Ill App. 3d Dist. 1938). An agister's lien is not acquired by a person who furnishes feed to livestock which is not kept on the furnisher's premises. *Ahlswede v. Schoneveld*, 87 Nev. 449, 488 P.2d 908 (Nev. 1971).

[6] The first affidavit signed by Mark Ray, filed with the DEBTORS' response to the PLAINTIFF'S motion, was an unsworn statement and was therefore flawed and could not properly have been considered. *Matter of Muscatell*, 106 B.R. 307 (Bankr.M.D.Fla. 1989). Mark Ray's sworn affidavit was filed after the conclusion of the briefing in this matter. Consequently, the PLAINTIFF, in his reply to the DEBTORS' response, did not counter Mark Ray's affidavit with any evidentiary support. The PLAINTIFF has not moved to strike Mark Ray's second affidavit nor has he supplemented the record since its filing.

rendered to the agistered cattle of $256,681.85. Based on documentation attached to the motion, $147,754.45 of that amount represented charges for silage. In opposition, the DEBTORS concede that they admitted that such an amount was owing, but not that the amount was properly subject to PLAINTIFF'S agister's lien.

While an admission made in a pleading may be construed as a binding "judicial admission," that determination is not automatic but, rather, is within the trial court's sound discretion. *Cooper v. Carl A. Nelson & Co.*, 211 F.3d 1008, 1014 (7th Cir. 2000). The court's exercise of that discretion is guided by the fundamental principle that the trial process is intended to facilitate the resolution of cases on the merits. Because the use of the judicial admission doctrine may short-circuit that process and potentially lead to results contrary to provable facts, it should be applied narrowly and only where necessary to protect the integrity of the process.

This Court does not believe that the DEBTORS should be precluded from asserting that the initial assessment of the amount of PLAINTIFF'S lien claim was incorrect. It does not appear to the Court that the DEBTORS have intentionally taken inconsistent positions. The DEBTORS gained no advantage by (perhaps) overstating the amount of the PLAINTIFF'S lien claim, and the PLAINTIFF has not suffered any prejudice. The amount of PLAINTIFF'S lien claim was not yet at issue when the DEBTORS made the assertion, an assertion that was based upon the amount that had been billed by PLAINTIFF, without a compelling need to trace, at that time, the exact usage of the silage. Moreover, the fact at issue, whether Pioneer silage was fed to the agistered cattle, is one that the PLAINTIFF has

the best knowledge of, personally or through his employees.

Whether the charges for the Pioneer silage are properly included as a component of the PLAINTIFF'S statutory agister's lien claim turns upon whether the silage was actually fed to the DEBTORS' livestock which were being cared for on the PLAINTIFF'S property. If not, the debt is unsecured. That issue should now be determined on its merits. The DEBTORS' assertion in their prior pleading will not be construed as an estoppel.

**PLAINTIFF'S claim for silage - Postpetition**

The PLAINTIFF claims a balance of $7,491.02 for Pioneer silage and $34,720.00 for LG silage.[7] The DEBTORS do not dispute that the total amount is $42,211.02, but assert that the LG silage, which was fed to the agistered livestock, has been paid for in full.[8] The DEBTORS also maintain that the Pioneer silage supplied to the DEBTORS during the bankruptcies was not fed to the agistered cattle but to other livestock owned by the DEBTORS. As set forth above, the PLAINTIFF is not entitled to claim an agister's lien for silage fed to livestock which it did not pasture and care for.

In addition to Mark Ray's affidavit, the DEBTORS have submitted the affidavit of Susan McSperritt, their accountant. In her affidavit, she states that PLAINTIFF made revisions to the DEBTORS' account by inaccurately reclassifying payments made by DEBTORS for 2007 LG silage as payments for 2007 Pioneer silage and issuing an invoice dated October 25, 2007, for shucklage from August 24, 2007 through October 24, 2007, for

---

[7] In support of his claim for silage, the PLAINTIFF submits his affidavit alleging that he sold approximately 16 tons per day of LG shucklage, at a price of $35.00 per ton, for the DEBTORS' cattle located on the PLAINTIFF'S land. The PLAINTIFF states that approximately 992 tons were fed to the DEBTORS' cattle during the pendency of the bankruptcies.

[8] On December 2, 2009, Mark Ray submitted a sworn affidavit stating that only LG silage was used to feed the DEBTORS' cattle on the PLAINTIFF'S property and that all of the LG silage so used was paid for.

9

$34,720.

According to the PLAINTIFF, the reclassification of payments from "LG silage" to "Pioneer silage" was done at the request of the DEBTORS through Kent Gordon, one of their employees.  The PLAINTIFF submitted the affidavit of John DeJaynes, the operator of Abingdon Business Solutions, which served as PLAINTIFF'S accountant.  According to his affidavit, although the DEBTORS directed at the beginning of the 2007 silage/shucklage season, that their payments were to be applied to both Pioneer and LG accounts, on September 10, 2007, at the direction of one of the DEBTORS' employees, all of the payments for 2007 were to be reallocated to the Pioneer silage/shucklage that had been delivered to the DEBTORS' farm, because the DEBTORS were uncertain whether they would need the full amount of the silage/shucklage.  At that same time, the DEBTORS' employee informed DeJaynes that the DEBTORS would purchase the LG silage/shucklage as needed on a per ton basis.  The LG silage/schucklage was delivered and stored at PLAINTIFF'S farm to be used as needed to feed DEBTORS' cattle.  DeJaynes' reclassified the DEBTORS'payments and prepared a new spreadsheet which he gave to the DEBTORS' employee and both agreed that the original invoices would be destroyed.

This conflicting evidence clearly creates a genuine issue of material fact as to whether the DEBTORS directed  the reallocation of the silage payments.

**Labor Charges**

A portion of the PLAINTIFF'S claim for agister's lien consists of rent, utilities and labor charges of $19,376.82, covering the period from August 16, 2007 through October 25, 2007. In support of his claim for labor charges incurred during this period, the PLAINTIFF

10

submits the affidavit of Frank Cameron, one of his employees during the period at issue. Cameron states that between 2006 and 2007, no employee of the DEBTORS either fed or watered any of the agistered cattle. He states that even after some of the cattle were removed in the Spring, no decrease in the amount of hours worked resulted, because the remaining cattle were kept in several different lots. The PLAINTIFF submitted his own affidavit which supports Cameron's version of the facts.

In direct contradiction, Mark Ray, in his sworn affidavit, states that from the Spring of 2007, when more than half of the DEBTORS' cattle were removed from PLAINTIFF'S property, until the Fall of 2007, when the remaining cattle were removed, Berwick's employees provided most of the services to the DEBTORS' cattle that were kept on the PLAINTIFF'S property. In Mark Ray's view, PLAINTIFF'S actual and reasonable labor charges must be limited to thirty hours per week, resulting in an overstatement of labor charges sought by the PLAINTIFF during that time of $9,987.50. Based on the submissions by the parties, the Court finds that the DEBTORS have raised a triable issue of fact with respect to the proper amount of the PLAINTIFF'S labor costs charged after the removal of the birthing cattle.

Accordingly, the PLAINTIFF'S Motion for Partial Summary Judgment will be denied. This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.

###